BEFORE THE SECOND DIVISION, APRIL 27, 1956

**No. 59874.**—Steelmasters, Inc. *v.* United States, petition 7193–R (New York).

RAO, Judge: This is a petition filed pursuant to the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed for under-valuation of several shipments of chinaware from Germany. Eight entries of this merchandise are here involved.

It appears from the record and the official papers that as to entries 741198 and 744319, the appraised values exceeded the entered values by the amounts deducted by petitioner for so-called inland freight; that with respect to entries 794976, 799445, 828376, 708094, and 723118, wherein petitioner entered at the invoice unit values less inland freight, the appraiser added 10 per centum to the invoice

unit values; and that in entry 777985, the appraiser made *per se* advances to the invoice values.

At the trial, the sole witness was Arthur Scholder, vice president of petitioner in charge of foreign purchasing. He testified that, from 1947 through 1952 or 1953, he made three to five trips abroad yearly, primarily to Germany, where he surveyed the chinaware market to set up new, post-war procedures for the purchase of chinaware for export to the United States. His job was an inclusive one which "sometimes transcended the mere fact of purchasing," but particularly involved attempts to determine market values in Germany.

With particular reference to entries 741198 and 744319, this witness stated that he personally made the purchases of the merchandise covered thereby, which were partial deliveries of blanket orders placed on his very first trip to Europe in 1947. As soon as this merchandise started to arrive in this country, and following a practice which the predecessor of his company had pursued as far back as 1910, he instructed his customs brokers to deduct inland freight charges in making entry. He attempted to sustain this action in connection with all chinaware coming from the Selb area in Germany, by testifying before the Bureau of Customs in Washington concerning the method of purchasing and conditions in Germany in the years 1947 and 1948, and, in fact, received a Bureau ruling favor-. able to this contention.

As to entries 794976, 799445, 828376, 708094, and 723118, Scholder stated that the merchandise covered thereby was purchased in the Meissen area of the Soviet Zone of Germany, through the Rasno Export Co. in Berlin. In making these purchases, he visited the factories, examined their production facilities and capabilities, selected the items which he felt would be salable on the American market, and placed quite large orders for this type of merchandise. The prices which he negotiated with the Meissen and Rasno directors were the invoice prices and entered values, the latter less inland freight. Inland freight was deducted because his company had the choice at all times of buying these goods ex-factory or f. o. b. seaport.

When the appraiser advised that another American importer was bringing in the same or similar merchandise at values which were roughly 10 per centum above the invoice unit values, petitioner immediately contacted the exporters to verify the freely offered export prices. At first, the exporters denied having sold this other importer and insisted that the prices charged petitioner were the freely offered export prices. Scholder was given a printed price list, which conformed with the entered values. This he turned over to the appraiser. It was sometime later that he ascertained that some small shipments were, in fact, made to this other importer.

In connection with entry 777985, Scholder testified that the merchandise was shipped under a blanket order placed anywhere from 6 months to a year prior to the acceptance date set forth in the invoice; that the prices from this factory were not stable; that there were price increases of which he was customarily advised; and that when he received such information he reported it to the customs officials. However, he did not receive any such information with respect to the prices involved in this entry.

This witness also stated that submission sheets were filed for each of these types of entries; that he did not withhold any information as to prices or values but, in fact, furnished all the information he had at all times; and that he did not intend to defraud the revenues of the United States or to deceive the appraiser as to the values of any of this merchandise.

When the examination of this witness was completed, counsel for the Government made the following statement:

Mr. Auster: May it please your Honors, I have no cross examination of this witness. I have the examiner of merchandise in court and he has heard the testimony. We both believe that the facts in our possession are substantially covered by the witness' testimony. There may be some variances about details which of course are quite unimportant. Under the circumstances, I have no desire to cross examine the witness.

It is apparent that, in making the entries here involved, petitioner completely and candidly disclosed to the appraiser's office all of the facts within its possession relating to the values of the instant merchandise and that there were no facts or circumstances known to it at the time of entry calculated to cause doubt as to the correctness of these values. The thorough investigation of the foreign market and of the business practices of the manufacturers which preceded and accompanied all of petitioner's purchases indicates an awareness on the part of petitioner of its duty to enter its importations at their proper values and the exercise of the proper degree of diligence in performing that duty.

That there may have been a lack of frankness upon the part of the exporters in failing to reveal transactions with other American importers and a carelessness in neglecting to advise petitioner of price advances cast no shadow upon the integrity and good faith of this petitioner. It was not through any omission in petitioner's efforts to seek information that these facts were not brought to light until after entry was made.

Insofar as the item of inland freight is concerned, the record plainly shows an honest difference of opinion between the appraiser and the importer on a question of law, with a complete revelation of all the facts bearing upon petitioner's position on the question.

From the evidence in this case, and in view of the foregoing considerations, we are satisfied that the entry of the merchandise at bar at lower values than those returned by the appraiser was without any intention to defraud the revenue of the United States, or misrepresent the facts of the case, or to deceive the appraiser as to the values of the merchandise. The instant petition is, therefore, granted.

Judgment will be entered accordingly.